**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

La Bonita Ole, Inc.

        Debtor.

_____/

Case No.: 8:08-bk-10512-MGW
Chapter 11

## JOINT PLAN OF REORGANIZATION SUBMITTED BY

## DEBTOR AND SUNTRUST BANK

## DATED AS OF AUGUST 19, 2009

SUBMITTED BY:

*/s/ Lynn Welter Sherman*
Florida Bar No.: 375616
Shutts & Bowen LLP
100 S. Ashley Dr., Suite 1500
Tampa, Florida 33602
Telephone: (813) 229-8900
Facsimile: (813) 229-8901
Email: lsherman@shutts.com
Attorneys for SunTrust Bank

and

Don M. Stichter (FBN 078280)
Stichter Riedel Blain & Prosser, P.A.
110 E. Madison St., Ste. 200
Tampa, FL 33602
Telephone: 813-229-0144
Facaimile: 813-229-1811
Email: dstichter@srbp.com
Attorneys for the Debtor

## JOINT PLAN OF REORGANIZATION SUBMITTED BY
## DEBTOR AND SUNTRUST BANK
## DATED AS OF AUGUST 19, 2009

SunTrust Bank ("SunTrust") and La Bonita Ole, Inc. ("LBO" or "Debtor") (SunTrust and Debtor are collectively referred to herein as "Proponents"), submit the following joint plan of reorganization under Chapter 11 of the United States Bankruptcy Code, dated as of August 19, 2009.

## ARTICLE 1
## DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in this Plan (as hereinafter defined). Such meanings shall be equally applicable to both the singular and plural forms of such terms. Any term used in capitalized form that is not defined in this Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules (as such terms are hereinafter defined) shall have the meaning ascribed to such term in the Bankruptcy Code or Bankruptcy Rules. The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply in construction of this Plan.

1.1 "Administrative Claim" means any Claim for the payment of any Administrative Expense.

1.2 "Administrative Expense" means (a) any cost or expense of administration of the Reorganization Case under Section 503(b) of the Bankruptcy Code including, but not limited to, any such cost or expense constituting (1) an actual and necessary post-petition cost and expense of preserving the Estate or operating the business of the Debtor, (2) a post-petition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of business, (3) a payment

TPADOCS 18512683 3

that is to be made under the Plan to cure defaults on executory contracts and unexpired leases, and (4) compensation or reimbursement of an expense to the extent allowed by the Bankruptcy Court under Sections 330(a) or 331 of the Bankruptcy Code and (b) any fee or charge assessed against the Estate under 28 U.S.C. §1930.

1.3    "Allowed" means and includes, with respect to any Claim (a) any Claim (other than a Disputed Claim), proof of which was timely filed or, by Order of the Bankruptcy Court, was not required to be filed or (b) any Claim (other than a Disputed Claim) that is listed in the Schedules as liquidated in amount and not disputed or Contingent, and, in each such case in (a) and (b) herein, as to which (1) no objection to the allowance thereof has been or may be filed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court or (2) the Claim has been allowed by a Final Order of the Bankruptcy Court (but only to the extent so allowed) or (3) this Plan otherwise declares and states expressly that such Claim is allowed without further order.

1.4    "Allowed Amount" means the dollar amount in which a Claim is Allowed; provided, however, that the Allowed amount of a Claim shall not exceed the Estimated Amount of such Claim as determined pursuant to an Estimation Order. No amount shall be Allowed for or on account of post petition interest on account of any Claim except as otherwise expressly specified in this Plan or provided by Final Order of the Bankruptcy Court.

1.5    "Avoidance Action" means any claim, cause of action, or right of the Debtors against any person arising from or related to the Reorganization Case, including, but not limited to, avoidance actions granted pursuant to and existing under

Sections 502, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code (other than those which are released or dismissed as part of and pursuant to the Plan).

1.6    "Avoidance Actions Recoveries" means (a) any and all Cash or other assets derived from and/or paid pursuant to Avoidance Actions and (b) the right to receive the proceeds or benefits of any Avoidance Actions.

1.7    "Bankruptcy Code" means Title 11 of the United States Code, 11 U. S. C. § § 101 et seq., as in effect on the Petition Date, together with all amendments and modifications to the extent applicable to the Reorganization Case.

1.8    "Bankruptcy Court" means either the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, having jurisdiction over the Reorganization Case or, to the extent the reference is withdrawn, the District Court.

1.9    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable to the Reorganization Case, together with all amendments and modifications to the extent applicable to the Reorganization Cases.

1.10    "Business Day" means any day other than a Saturday, Sunday or legal holiday (as such term is defined in Bankruptcy Rule 9006(a)).

1.11    "Cause of Action" shall mean all claims and causes of action now owned or acquired by the Debtors prior to the Effective Date, whether arising under the Bankruptcy Code or other federal or state law, including without limitation any Avoidance Actions.

1.12 "Claim" means (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, Contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, Contingent, matured, unmatured, disputed, undisputed, secured or unsecured. The term "Claim" shall be broadly construed herein to include all manner and type of claim, whenever and wherever such claim may arise.

1.13 "Class" means a category of Claims as classified in Article 3 of this Plan.

1.14 "Confirmation" or "Confirmation of this Plan" means the entry by the Bankruptcy Court of the Confirmation Order.

1.15 "Confirmation Date" means the date on which the Confirmation Order is entered.

1.16 "Confirmation Hearing" means the hearing(s) which shall be held before the Bankruptcy Court to consider Confirmation of the Plan.

1.17 "Confirmation Order" means the Order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.18 "Contingent" means a right that has not accrued and that is dependent upon a future event or events that has or have not occurred and may never occur.

1.19 [intentionally blank].

1.20 "Debtor" means La Bonita Inc., the debtor and debtor-in-possession in this Chapter 11 case.

1.21 "Debtor in Possession" means La Bonita Ole, Inc., as debtor-in-possession.

1.22 [Intentionally blank]

1.23 "Disclosure Statement" means the Disclosure Statement with respect to Joint Plan of Reorganization Submitted by Debtor and SunTrust Bank, including all annexes, exhibits and schedules attached thereto or referenced therein (and the exhibits, if any, to such annexes, exhibits and schedules), pursuant to Section 1125 of the Bankruptcy Code and approved by the Bankruptcy Court, as such Disclosure Statement may be further amended or modified from time to time.

1.24 "Disputed Claim" means a Claim that has not been allowed by a Final Order of the Bankruptcy Court as to which (a) a Proof of Claim has been filed with the Bankruptcy Court, or is deemed filed under applicable law or Order of the Bankruptcy Court and (b) an objection to the allowance thereof has been or may be filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court and any such objection has not been (1) withdrawn, (2) overruled or denied in whole or part by a Final Order of the Bankruptcy Court or (3) granted in whole or part by a Final Order of the Bankruptcy Court. For purposes of this Plan, a Claim that has not been allowed by a Final Order of the Bankruptcy Court shall also be considered a Disputed Claim, whether or not an objection has been or may be filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, if (a) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, (b) the classification of the Claim specified in the Proof of Claim differs from

the classification of any corresponding Claim scheduled in the Schedules, (c) any corresponding Claim has been scheduled in the Schedules as disputed, Contingent or unliquidated, (d) no corresponding Claim has been scheduled in the Schedules or (e) such Claim is reflected as unliquidated or Contingent in the Proof of Claim filed in respect thereof.

1.25 [intentionally blank]

1.26 "District Court" means the United States District Court for the Middle District of Florida, or the unit thereof having jurisdiction over the matter in question.

1.27 "Effective Date" means, and shall occur on, the first (1st) Business Day immediately following the later of: (a) eleven (11) calendar days after the Confirmation Date; and (b) the first date upon which all of the conditions to occurrence of the Effective Date contained in Section 10.2 of the Plan have been satisfied. Provided, however, that the Effective Date may occur at a point in time when the Confirmation Order is not a Final Order unless the effectiveness of the Confirmation Order has been stayed or vacated, in which case the Effective Date shall be the first (1st) Business Day immediately following such date as is eleven (11) calendar days following the expiration or other termination of any stay of effectiveness of the Confirmation Order; and, further provided, that the Effective Date shall not occur until all of the conditions to occurrence of the Effective Date set forth in Section 10.2 of this Plan have been satisfied.

1.28 "Estate" means, as to the Debtor, the estate created for Debtor by Section 541 of the Bankruptcy Code upon the commencement of its Reorganization Case and all income and earnings of the Debtor in Possession subsequent to the commencement of the Reorganization Case through the Confirmation Date.

1.29 "Estimated Amount" means the amount at which the Bankruptcy Court or, where required by applicable law, the District Court, estimates any Claim against the Debtor which is contingent, unliquidated or disputed, for the purpose of: (a) allowance under Section 502(c) of the Bankruptcy Code or (b) assisting the Bankruptcy Court in making the findings required for Confirmation of this Plan pursuant to Sections 1129(a)(7)(A)(ii) and (a)(11) and, if necessary, Sections 1129(b)(I) and (2) of the Bankruptcy Code.

1.30 "Estimation Order" means an Order of the Bankruptcy Court or, where required by applicable law, the District Court, that determines the Estimated Amount or a Claim against the Debtor.

1.31 [intentionally blank]

1.32 "Final Order" means an Order, the implementation, operation or effect of which has not been stayed and as to which Order (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing or writ of certiorari has expired and as to which no appeal or petition for review or rehearing or certiorari has been taken and is pending.

1.33 "General Unsecured Claim" means any Claim (regardless of whether such Claim is covered by insurance) that is neither secured nor entitled to priority under the Bankruptcy Code or a Final Order of the Bankruptcy Court, including, but not limited to: (a) any Claim arising from the rejection of all executory contract or unexpired lease under Section 365 of the Bankruptcy Code and (b) any portion of a Claim to the extent the value of the holder's interest in the Estate's interest in the property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim

subject to setoff is less than the amount of the Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code.

1.34 "Governmental Unit" means any foreign, provincial, federal, state, local or municipal (a) government, (b) governmental agency, (c) governmental commission, (d) governmental department, (e) governmental bureau, (f) governmental ministry or (g) governmental entity.

1.35 "Insider" shall be defined in accordance with 11 U.S.C. Section 101(31).

1.36 "Lien" means, with respect to any asset or property of the Debtor any mortgage, lien, pledge, charge, security interest, encumbrance or other security device of any kind affecting such asset or property.

1.37 "Order" means an order or judgment of a court.

1.38 "Person" means any person, individual, partnership, corporation, limited liability company, joint venture company, association or other entity of whatever kind, whether or not for profit, including, but not limited to, any "person" as such term is defined in Section 101(41) of the Bankruptcy Code, but excluding any Governmental Unit.

1.39 "Petition Date" means July 16, 2008.

1.40 "Plan" means this plan of reorganization, including all exhibits and other attachments hereto, as they may be amended, modified, or supplemented from time to time.

1.41 "Plan Proponents" or "Proponents" means SunTrust Bank and the Debtor collectively.

1.42   "Priority Claim" means any Claim against the Debtor (other than an Administrative Claim or a Priority Tax Claim) to the extent such Claim is entitled to a priority in payment under Section 507(a) of the Bankruptcy Code.

1.43   "Priority Tax Claim" means any Claim against the Debtor to the extent that such Claim is entitled to a priority in payment under Section 507(a)(7) of the Bankruptcy Code.

1.44   [intentionally blank]

1.45   "Proof of Claim" means any proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rules 3001 or 3002.

1.46   "Schedules" means the Schedules, Statements and Lists filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they may be amended or supplemented from time to time.

1.47   "Secured Claim" means any Claim that is (a) secured in whole or part, as of the Petition Date, by a Lien which Lien is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law or (b) subject to setoff under Section 553 of the Bankruptcy Code, but only to the extent of the value of the assets or property securing any such Claim, or to the extent of the amount subject to setoff, as the case may be.

1.48   [intentionally blank]

1.49   "State Court Action" shall mean the action entitled <u>SunTrust Bank v. Tammy M. Young, an individual, and TMY-1, LLC, a Florida limited liability company</u>, presently pending in the Circuit Court in and for Hillsborough County, Florida (Case No. 08-16130, Div. A).

1.50 "SunTrust" means SunTrust Bank.

1.51 "TMY Loan" shall me the loans from SunTrust to TMY-1, LLC, which are secured by mortgages against the TMY Property, and guaranteed by LBO, as evidenced by, among other things, the loan documents listed on Exhibit B (collectively, the "TMY Loan Documents").

1.52 "TMY Property" shall me the real property located at 5804 Columbus Drive, Tampa, Florida, which constitutes the Debtor's business premises.

## ARTICLE 2
## TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

2.1 <u>Administrative Claims</u>. Each holder of an Allowed Administrative Claim (except any such holder that agrees with the Proponents to different treatment) shall receive the following in full satisfaction, settlement, release, extinguishment and discharge of such Claim: quarterly payments, commencing 3 months after the Effective Date, of 50% of Available Free Cash Flow for Unsecured Creditors, shall be distributed pro rata among holders of Allowed Administrative Claims, until the earlier of: (a) such time as all Allowed Administrative Claims have been paid in full; or (b) the Third Anniversary Date. Any amounts due and owing to Administrative Claims of professionals shall on the Third Anniversary Date shall be discharged. Any amounts due and owing to Administrative Claims of vendors under 11 U.S.C. Section 503(b)(9) on the Fourth Anniversary Date shall be discharged.

2.2 <u>Priority Tax Claims</u>. Each holder of an Allowed Priority Tax Claim (except any such holder that agrees to different treatment) shall receive the Allowed Amount of such holder's Allowed Priority Tax Claim in equal monthly payments of a total value, as

of the Effective Date, equal to the allowed amount of the claim over a period ending 5 years after the Petition Date.

## ARTICLE 3
## CLASSIFICATION OF CLAIMS

3.1    <u>Classification</u>.

(a)    <u>General</u>. Section 3.2 herein sets forth a designation of Classes of Claims. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of the Class and is classified in a different Class to the extent the Claim qualifies within the description of that different Class.

(b)    <u>Unclassified Claims</u>. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and are excluded from the Classes established in Section 3.2 herein. The treatment accorded Administrative Claims and Priority Tax Claims is set forth in Article 2 of this Plan.

(c)    <u>Definitions</u>.  For purposes of Article 3, the following definitions shall apply:

(i)    ***Free Cash Flow*** shall mean the Debtor's net operating cash flow measured annually on each Anniversary Date, less:  (a) the payments due on Note A and Note B; (b) interest payments and the $150,000.00 minimum annual principal reductions due on Note C; (c) payments to Class 4 (Lawrence Equipment); (d) SWAP payments to SunTrust.

(ii)    ***Available Free Cash Flow*** shall mean Free Cash Flow less Operating Retainage.

(iii)    ***Operating Retainage.*** The Reorganized Debtor may retain 50% of Available Free Cash Flow to fund future operations, until such time as the cumulative amount retained totals $1 million.

(iv)    ***Available Free Cash Flow for Unsecured Creditors*** shall mean Available Free Cash Flow less contingent principal reductions on Note C.

(v)    ***Anniversary Date*** shall mean those days that fall one or more year(s) after the Effective Date.

For purposes of illustration only, Exhibit A is a spreadsheet showing the calculation of the various defined terms.

3.2    <u>Classes</u>. For the purposes of this Plan, the Claims against the Debtor are grouped in the following Classes in accordance with Section 1122(a) of the Bankruptcy Code, and shall be treated as set forth below:

(a)    Class 1 (Priority Claims) shall be paid in full in cash within 10 days after the Effective Date, except to the extent the holder agrees to different treatment.

(b)    Class 2 (Tax Lien Claims) shall consist of the claims of taxing authorities to the extent such claims are secured by a Lien. Tax lien claims shall be paid in full in equal monthly installments commencing on the Effective Date and ending 5 years after the Petition Date.

(c)    <u>Class 3 (Secured Claim of SunTrust):</u> SunTrust shall have an allowed Secured Claim in the amount of approximately $3,805,272.00 (subject to adjustment to account for interest, costs, legal fees, and adequate protection payments received). SunTrust's Secured Claim shall be paid as follows:

**Note A** in the amount of $1,000,000.00 shall be payable, with interest at LIBOR plus 2.75% in 120 monthly installments of $8,333.33 (principal) plus interest.

**Note B** in the amount of $500,000.00 shall be payable, with interest at LIBOR plus 2.75%, in monthly installments of interest only for 60 months, with all unpaid principal and interest due 60 months after the Effective Date. The outstanding principal balance on Note B shall not exceed 70% of accounts receivable and 25% of inventory (at cost).

**Note C** in the amount of approximately $2,305,272.00 (subject to adjustment to account for interest, costs, legal fees, and adequate protection payments received) shall be payable, with interest at LIBOR plus 8.5%, as follows: (a) interest shall be payable monthly; (b) quarterly, commencing 3 months after the Effective Date, principal reductions of 50% of Available Free Cash Flow; provided however, that a minimum cumulative principal reduction of at least $150,000.00 shall be made annually on each Anniversary Date (regardless of the amount of Available free Cash Flow). All unpaid principal and interest under Note C shall be due and payable in full on the Fifth Anniversary Date.

**Warrants**: The Reorganized Debtor shall grant SunTrust warrants to purchase 100% of the common stock in the Reorganized Debtor, anytime after the 5th Anniversary Date for one dollar ($1.00). The reorganized Debtor shall have the right to repurchase the warrants any time after Note C is repaid in full as follows:

Prior to the 1st Anniversary Date: $175,000.00

Prior to the 2nd Anniversary Date: $350,000.00

Prior to the 3rd Anniversary Date: $525,000.00

Prior to the 4th Anniversary Date: $700,000.00

Prior to the 5th Anniversary Date: $875,000.00

***Provided, however that if the Reorganized Debtor repurchases the warrants prior to the Fifth Anniversary Date, the source of funds shall not be Free Cash Flow, unless all Administrative Claims and Class 1 through 5 Claims have been paid in full.***

**Security:** Notes A, B and C shall be secured by the Liens, mortgages, and security agreements that secure the Debtor's pre-petition obligations to SunTrust, which liens and security interests are hereby expressly preserved. Note C shall also be secured by a pledge of 100% of the stock in the Reorganized Debtor.

**SWAP Payments:** All payments under the existing interest rate SWAP contract on the LBO Loan and the TMY Loan shall be made as and when due under the terms of such agreements.

**TMY Property and TMY Loan:** On the Effective Date, the TMY Property shall be transferred to the Reorganized Debtor, and the lease of the TMY Property by and between the Debtor and TMY-1, LLC shall be rejected. On the Effective date, the Reorganized Debtor shall pay all real property taxes due on the TMY Property. Debtor shall assume the existing TMY-1 Loan Documents (including SWAP contracts), subject to the following modifications (which shall be incorporated into an amended and restated mortgage and loan modification agreement by and between SunTrust, the Reorganized Debtor, TMY-1, LLC and Tammy Young: (a) the total amount of the TMY debt under the existing notes shall treated as follows: $2.2 million

shall be payable in monthly payments of $22,000.00, which shall be applied first to interest at LIBOR plus 2.75% and the remainder to principal; (b) the remainder due an owing under the TMY Loan of approximately $555,272.00 shall be consolidated into Note C. All principal and unpaid interest on the assumed and restated TMY Loan shall be due and payable on the Fifth Anniversary Date. The restated TMY Loan shall be secured by all existing mortgages, security interests and liens that secured the TMY Loan prior to the Effective Date, as well as a pledge of 100% of the stock in the Reorganized Debtor.

**Guarantors**:   Provided that there is no default under the terms of the Plan or the SunTrust loan documents, SunTrust shall be stayed from seeking to collect any obligations of LBO or TMY-1, LLC from Tammy Young or TMY-1, LLC on.

(d)   Class 4 (Critical Vendor Claim of Lawrence Equipment): The unsecured claim of Lawrence Equipment Co., Inc. shall be allowed in the amount of $460,755.03 and shall be paid in full without interest in 60 monthly installments of $7,679.00 each, commencing on the 1st day of the month that is at least 30 days after the Effective Date.

(e)   Class 5 (General Unsecured Claims) Allowed Unsecured Claims shall be paid no more than 75% of the allowed amounts of their claims to the extent of the Reorganized Debtor's Available Free Cash Flow for Unsecured Creditors (after first deducting any amounts payable to Allowed Administrative Claims under this Plan) during the 4 years following the Effective Date. After Allowed Administrative Claims have been paid in full or discharged (on the Third Anniversary Date), all of the Reorganized Debtor's Available Free Cash Flow for Unsecured Creditors shall be

distributed to Class 5 creditors.  Payments to Class 5 shall me made quarterly, commencing three months after the Effective Date, and shall be distributed pro rata. Any amounts due and owing to Class 5 claimants after the Fourth Anniversary Date shall be discharged.

(f)     Class 6 [intentionally blank]

(g)     Class 7 (Equity Interests):  Existing equity interests shall be cancelled on the Effective Date and the stock in the Reorganized Debtor shall be issued to existing equity holders in the amounts shown on Exhibit C.  To secure payment of Note C, all shares in the Reorganized Debtor shall be pledged to SunTrust;  the stock pledge shall be released upon payment in full of Note C.  Until such time as the principal balance of Note C has been reduced to $555,000.00, management of the Reorganized Debtor shall be vested in Jeffrey Granger, as Chief Restructuring Officer ("CRO") of the Reorganized Debtor.  On the Effective Date, managerial control of the Reorganized Debtor shall be granted to Mr. Granger, pursuant to Florida Statutes Section 607.0732(f).  Mr. Granger shall consult with the management of the Reorganized Debtor and give reasonable consideration to the views of Mr. Gregory Dingle, CFO, regarding personnel and financial matters; however, Mr. Granger shall have absolute management control over the Reorganized Debtor.  Mr. Granger shall be compensated monthly for services rendered to the Reorganized Debtor at the rate of $400.00 per hour.

3.3     Impaired Classes of Claims: Classes 1 through 5 are impaired under the Plan.

## ARTICLE 4
## IDENTIFICATION OF DIRECTORS, OFFICERS AND INSIDERS
## TO BE EMPLOYED BY THE REORGANIZED DEBTOR

The Reorganized Debtor may enter into employment agreements with one or more Insiders of the Debtor, which agreements shall be negotiated at arms length and to the extent finalized prior to the Confirmation Hearing, will be disclosed to all creditors. Until such time as Note C has been reduced to an outstanding balance of $555,000.00, management of the Reorganized Debtor shall be vested in Jeffrey Granger, as Chief Restructuring Officer ("CRO") of the Reorganized Debtor. On the Effective Date, managerial control of the Reorganized Debtor shall be granted to Mr. Granger, pursuant to Florida Statutes Section 607.0732(f). Mr. Granger shall consult with the management of the Reorganized Debtor and give reasonable consideration to the views of Mr. Gregory Dingle, CFO, regarding personnel and financial matters; however, Mr. Granger shall have absolute management control over the Reorganized Debtor. Mr. Granger shall be compensated monthly for services rendered to the Reorganized Debtor at the rate of $400.00 per hour.

## ARTICLE 5
## TREATMENT OF ALLOWED CLAIMS

The Allowed Claims, as classified in Article 3 herein, shall be satisfied in the manner set forth in Article 3. The treatment of, and the consideration to be received by, holders of Allowed Claims pursuant to the Plan shall be in full satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims.

## ARTICLE 6
## MEANS FOR EXECUTION OF PLAN

6.1    Plan Funding. The Plan shall be implemented on the Effective Date. The payments due under the Plan are to be paid from the net operating cash flow of the Reorganized Debtor.

6.2    Transactions on Business Days. If the Effective Date, or any other date on which a transaction may under this Plan, shall occur on a day that is not a Business Day, the transactions contemplated by this Plan to occur on such day shall occur instead on the next succeeding Business Day.

6.3    Disputed Claims.

(a)    Objection Deadline. As soon as practicable, but in no event later than forty-five (45) calendar days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, objections to Claims shall be filed with the Bankruptcy Court and served upon the holders thereof and the United States Trustee for the Middle District of Florida;

(b)    Prosecution of Objections. On and after the Effective Date, only the Reorganized Debtor shall have the authority to file objections, litigate to judgment, settle or withdraw objections to Disputed Claims.   On and after the Effective Date, the Reorganized Debtor shall be entitled to compromise or settle any Disputed Claim after notice and hearing.

6.4    Distributions/Withholding of Taxes. The Reorganized Debtor shall make all payments required by the Plan.  The Reorganized Debtor shall withhold from any assets and property distributed under this Plan any assets or property which must be withheld

for foreign, federal, state or local taxes payable with respect thereto or payable by the Person entitled to such assets to the extent required by applicable law.

6.5    Unclaimed Property. Any Cash, assets and other property to be distributed under the Plan that remain unclaimed or otherwise not deliverable to the Person or Governmental Unit entitled thereto before the later of (a) six (6) months after the Confirmation Date or (b) sixty (60) calendar days after an Order allowing such Person's or Governmental Unit's Claim becomes a Final Order, shall become vested in, and shall be transferred and delivered to, the Reorganized Debtor to be applied toward the funding of the Plan. In such event, such Person's or Governmental Unit's Claim shall no longer be deemed to be Allowed, and such Person or Governmental Unit shall be deemed to have waived its rights to such payments or distributions under this Plan pursuant to Section 1143 of the Bankruptcy Code and shall have no further Claim in respect of such distribution and shall not participate in any further distributions under this Plan with respect to such Claim.

6.6    Non-Negotiated Checks. If a holder of an Allowed Claim fails to negotiate a check issued to such holder pursuant to this Plan within 90 days of the date such check was issued, then the amount of Cash attributable to such check shall be deemed to be unclaimed property in respect of such holder's Allowed Claim and shall be transferred and delivered to the Reorganized Debtor to be applied toward the funding of the Plan. In such event, such holder's Claim shall no longer be deemed to be Allowed and such holder shall be deemed to have waived its rights to such payments or distributions under this Plan pursuant to Section 1143 of the Bankruptcy Code and shall

have no further Claim in respect of such distribution and shall not participate in any further distributions under this Plan with respect to such Claim.

6.7     Exoneration and Reliance. The Proponents and the Reorganized Debtor, and their respective affiliates, officers, directors, stockholders, members, representatives, attorneys, financial advisors and agents shall not be liable to any holder of a Claim or other party with respect to any action, omission, forbearance from action, decision or exercise of discretion taken in connection with (a) the implementation of any of the transactions provided for, or contemplated in, the Plan; or (b) the administration of the Plan or the assets and property to be distributed pursuant to the Plan, other than for willful misconduct or gross negligence.

6.8     Form of Payments. Except where the Plan contemplates deferred payment or delivery of property or securities, payments to be pursuant to this Plan shall be made in cash or by check drawn on a domestic bank or by wire transfer from a domestic bank.

6.9     Further Authorization. The Reorganized Debtor, if and to the extent necessary, shall seek such Orders, judgments, injunctions and rulings that may be required to carry out further the intentions and purposes of, and give full effect to the provisions of, the Plan.

6.10     Transfer Taxes. The issuance, transfer or exchange of any of the securities issued under, or the transfer of any other assets or property pursuant to, the Plan or the Plan Documents, or the making or delivery of an instrument of transfer under the Plan or the Plan Documents, shall not (and the Confirmation Order shall so

order), pursuant to Section 1146 of the Bankruptcy Code, be taxed under any law imposing a stamp tax, transfer tax or other similar tax.

6.11    Recordable Order. The Confirmation Order shall be declared to be in recordable form and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications or other supporting documents.

6.12    Effectuating Documents and Further Transactions. The Reorganized Debtor shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and may also certify or attest to any of the foregoing activities.

## ARTICLE 7
## EFFECTS OF PLAN CONFIRMATION

7.1    Transfer of Property. At the time the Confirmation Order becomes a Final Order, ownership and control of all property of the Debtor and the Estate shall vest in the Reorganized Debtor, free and clear of all liens, claims, encumbrances, and interests, except as otherwise expressly provided in this Plan.

7.2    Discharge and Injunction. Pursuant to Section 1141(d) of the Bankruptcy Code, and except as is otherwise specifically set forth herein, Confirmation of this Plan discharges the Debtors from (1) all Claims (including, but not limited to, claims based upon any act or omission, transaction or other activity or security instrument or other agreement of any kind or nature occurring, arising or existing prior to entry of the Confirmation Order or arising from any pre-Confirmation conduct, act or omission of the

Debtors) against, liabilities of (including, but not limited to, any liability of a kind specified in Section 502(g), 502(h) or 5O2(i) of the Bankruptcy Code), liens on, obligations of, and Interests in the Debtor or the assets and properties of the Debtor, whether known to, unknown or knowable by the holder thereof and (2) all causes of action, whether known to, unknown or knowable by the holder thereof, either directly or derivatively through the Debtor, based on the same subject matter as any Claim or Interest, in each case regardless of whether or not a Proof of Claim or Proof of Interest was filed, whether or not Allowed and whether or not the holder of the Claim or Interest voted on or accepted the Plan. Except for the obligations expressly imposed by the Plan, the distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, extinguishment and termination of all such Claims against, liabilities of, liens on, obligations of and Interests in the Debtors or the assets and properties of the Debtors. As provided in Section 524 of the Bankruptcy Code, the discharge provided herein operates as an injunction against, among other things, the assertion of any Claim or Interest or the commencement of legal action or process against the Debtors or Reorganized Debtor or against the property of the Debtor or Estate that is vested in the Reorganized Debtor.

     7.3   <u>No Liability for Tax Claims</u>. Unless a taxing authority has asserted a Claim against the Debtors before the bar date established therefor, no Claim of such authority shall be allowed against the Debtors, for taxes, penalties or interest arising out of the failure, if any, of the Debtors to have filed any tax return, including, but not limited to, any income tax return or franchise tax return in any prior year or arising out of an audit of any return for a period before the Petition Date.

## ARTICLE 8
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1 <u>Assumption and Rejection of Executory Contracts and Unexpired Leases.</u>
Any executory contract or unexpired lease that has not been expressly assumed under this Plan or pursuant to Final Order prior to the Confirmation Date, shall be deemed to have been rejected.

8.2 <u>Damages Upon Rejection</u>. The Bankruptcy Court shall determine the dollar amount, if any, of the Claim of any Person or Governmental Unit seeking damages by reason of the rejection of any executory contract or unexpired lease; provided, however, that such Person or Governmental Unit files a Proof of Claim with the Bankruptcy Court before thirty (30) calendar days following the Confirmation Date. To the extent any such Claim is Allowed by the Bankruptcy Court by Final Order, such Claim shall become, and shall be treated for all purposes under this Plan as, an Allowed Unsecured Claim and the holder thereof shall receive distributions as a holder of an Allowed Claim in such Class or Classes pursuant to this Plan. This Plan shall constitute notice to Persons and Governmental Units that may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the bar date for filing a Proof of Claim in connection therewith; provided, however, that the Reorganized Debtor shall have no obligation to notify such Persons and Governmental Units that the Confirmation Date has occurred.

## ARTICLE 9
## EFFECTUATION AND SUPERVISION OF THE PLAN

9.1 <u>Jurisdiction</u>. Until the Bankruptcy Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction that is permissible, including that

necessary to ensure that the purposes and intent of the Plan are carried out and to hear and determine all Claims that could have been brought before the entry of the Confirmation Order. Except as otherwise provided in this Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against the Debtor and to adjudicate and enforce all causes of action that may exist on behalf of the Debtor. Nothing contained herein shall prevent the Debtor from taking such action as may be necessary to enforce or prosecute any cause of action that the Debtor has or may have and that may not have been enforced or prosecuted by the Debtor, which causes of action shall survive Confirmation of the Plan and shall not be affected thereby except as specifically provided herein.

9.2    <u>General Retention</u>. Following Confirmation of the Plan, the Bankruptcy Court shall also retain jurisdiction for the purposes of classifying any Claim, reexamining Claims that have been Allowed for purposes of voting and determining such objections as may be filed with the Bankruptcy Court with respect to any Claim. The failure by the Debtor or Proponents to object to or examine any Claim for the purposes of voting shall not be deemed a waiver of the right of the Reorganized Debtor's right to object to or re-examine such Claim, in whole or in part.

9.3    <u>Specific Purposes</u>. In addition to the foregoing, the Bankruptcy Court shall retain jurisdiction for the following specific purposes after the Confirmation of this Plan:

(a)    to modify the Plan after Confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code;

(b)    to correct any defect, cure any omission or reconcile any inconsistency in the Plan, or the Confirmation Order as may be necessary to carry out

TPADOCS 18512683 3

the purposes and intent of the Plan, including the, adjustment of the date(s) of performance under the Plan, and any other documents related thereto in the event the Effective Date does not occur as provided herein, so that the intended effect of the Plan, and such other documents may be substantially realized thereby;

(c)     to assure the performance by the Reorganized Debtor of its obligations to make distributions under the Plan;

(d)     to enforce and interpret the terms and conditions of the Plan and the Plan Documents;

(e)     to enter such Orders, including, but not limited to, injunctions, as are necessary to enforce the title, rights and powers of the Reorganized Debtor or the holder of a Claim;

(f)     to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters with respect to the Debtor arising prior to the Effective Date or relating to the period of administration of the case;

(g)     to hear and determine all applications for compensation of professionals and reimbursement of expenses under Sections 330, 331 or 503(b) of the Bankruptcy Code;

(h)     to hear and determine any causes of action in any way related to the Plan or the transactions contemplated hereby or any other core proceeding against the Debtor or any other party against whom the Estate has a claim or cause of action;

(i)     to determine any and all motions pending on Confirmation for the rejection, assumption or assignment of executory contracts or unexpired leases and the allowance of any Claim resulting therefrom;

(j)     to determine such other matters and for such other purposes as may be if provided in the Confirmation Order;

(k)     to consider and act on the compromise and settlement of any Claim;

(l)     to enter such Orders as are necessary to implement and enforce the injunction described in Sections 7.2 and 7.3 herein;

(m)     to enter such Orders as are necessary to implement and enforce any other Orders entered in the Reorganization Case;

(n)     to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code; and

(o)     to enforce and interpret the provisions of the Plan.

### ARTICLE 10
### CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS

10.1     <u>Conditions to Confirmation</u>. Confirmation of the Plan shall not occur unless each of the following conditions has been satisfied or has been waived in a writing executed by the Proponents:

(a)     <u>Disclosure Statement</u>. The Bankruptcy Court shall have approved the Disclosure Statement.

(b)     <u>Confirmation Order</u>. The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the

Confirmation Order, and any other Order entered in conjunction therewith, in form and acceptable to the Proponents.

10.2 <u>Conditions to Effectiveness</u>. Notwithstanding any other provision of the Plan or the Confirmation Order, the Effective Date of the Plan shall not occur unless and until each of the following conditions has been satisfied or has been waived in a writing executed by the Proponents.

(a) <u>Final Confirmation Order</u>. The Confirmation Order (and such related Orders, if any) shall have become a Final Order; and,

(b) <u>Plan Documents</u>. All documents necessary or appropriate to the implementation of this Plan shall have been executed, delivered and, where applicable, filed with the appropriate governmental authorities, including but not limited to: (a) Stock Pledge, executed by equity security holders, pledging stock in Reorganized Debtor as security for payment of Note C, is executed and delivered to SunTrust, and duly executed stock transfer powers and shares delivered to escrow agent; (b) TMY-1 Loan documents incorporating and implementing Plan are duly executed by TMY-1, LLC and Tammy Young, as guarantor, are executed and delivered to SunTrust; (c) Stock Pledge, executed by Tammy Young, pledging 100% of TMY-1, LLC stock as security for payment of the TMY Loan, is executed and delivered to SunTrust, and duly executed stock transfer powers and shares delivered to escrow agent; and (d) Notes A, B, and C have been duly executed and delivered to SunTrust.

10.3 <u>Waiver</u>. Notwithstanding any other provision of the Plan or the Confirmation Order, this Plan shall not be binding on any party in interest unless and

until each of the foregoing conditions to Confirmation and the Effective Date has occurred or has been waived in a writing executed by the Proponents.

## ARTICLE 11
## ACCEPTANCE OR REJECTION OF PLAN

11.1    <u>Each Impaired Class Entitled to Vote Separately</u>. Each impaired Class of Claims or Interests shall be entitled to vote separately to accept or reject the Plan.

11.2    <u>Class Acceptance Requirement</u>. Consistent with Section 1126(c) of the Bankruptcy Code, and except as provided in Section 1126(e) of the Bankruptcy Code, a Class of Claims shall have accepted this Plan if this Plan is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

11.3    <u>Cramdown</u>. If any impaired Class of Claims or Interests fails to accept the Plan by the requisite majority, the Proponents reserve the right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code

## ARTICLE 12
## MISCELLANEOUS PROVISIONS

12.1    <u>Revocation of Plan</u>. Proponents reserve the right to revoke and withdraw the Plan before the entry of the Confirmation Order.  If Proponents revoke or withdraw the Plan, or if Confirmation of the Plan does not occur, then, the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against Debtor, or any other Person or to prejudice in any manner the rights of Proponents in any further proceedings involving the Debtor.

12.2 <u>Headings</u>. Headings are utilized in this Plan for convenience and reference only and shall not constitute a part of this Plan for any other purpose.

12.3 <u>Due Authorization by Holders of Claims</u>. Each and every holder of a Claim who elects to participate in the distributions provided for herein warrants that such holder is authorized to accept, in consideration of such holder's Claim against the Debtor, the distributions provided for in this Plan and that there are no outstanding commitments, agreements or understandings, express or implied. that may or can in any way defeat or modify the rights conveyed, or obligations undertaken, by such holder under the Plan.

12.4 <u>Payment or Distribution Dates</u>. Whenever any payment or distribution to be under this Plan shall be due on a day other than a Business Day, such payment or distribution shall, instead, be made, without interest, on the next Business Day thereafter.

12.5 <u>Modification of Payment Terms</u>. The Reorganized Debtor reserves the right to modify the treatment of any Allowed Claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date upon the consent of the Person or Governmental Unit whose Allowed Claim treatment is being modified.

12.6 <u>Entire Agreement</u>. The Plan, including all exhibits and annexes hereto, sets forth the entire agreement and undertakings relating to the subject matter herein and supersedes all prior discussions and documents. No Person or Governmental Unit shall be bound by any terms, conditions, definitions, warranties, understandings or representations with respect to the subject matter herein, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

TPADOCS 18512683 3

12.7   Administrative Claims Bar Date. Unless otherwise ordered by the Bankruptcy Court, the Confirmation Order shall operate to set a bar date for Administrative Claims, which bar date shall be thirty (30) days after the Effective Date. Claimants holding Administrative Claims against the Debtor not paid on the Effective Date may submit a Request for Payment of Administrative Expense on or before such bar date. The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 2002 and 3020(c) shall set forth such date and constitute notice of the Administrative Claims bar date. The Reorganized Debtor and any other party-in-interest shall have sixty (60) days after the Administrative Claims bar date to review and object to such Claims before a hearing for determination of such Administrative Claims is held by the Bankruptcy Court.

12.8   Confirmation Order. In addition to the requirements set forth in the Plan, the Confirmation Order shall also ratify all transactions consistent with the provisions of the Plan and the Plan Documents effected by the Debtor during the period commencing on the Petition Date and ending on the Effective Date.

12.9   Governing Law. Except to the extent that federal law (including, but not limited to, the Bankruptcy Code and the Bankruptcy Rules) is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida.

12.10  Severability. Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision in the Plan is either illegal on its face or illegal as applied to any Claim or Interest, such provision shall be unenforceable either as to all holders of Claims or Interests or as to the holder of such Claim or Interest as to which

the provision is illegal, respectively. Such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect orally other provision of the Plan.

12.11 <u>Time</u>. In computing any period of time prescribed or allowed by the Plan, the day of the act, event or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is not a Business Day or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days. When the period of time prescribed or allowed is less than eight (8) days, intermediate days that are not Business Days shall be "excluded in the computation.

12.12 <u>No Interest</u>. Except as expressly stated in the Plan or otherwise Allowed by Final Order of the Bankruptcy Court, no interest, penalty or late charge arising after the Petition Date is to be allowed on any Claim.

12.13 <u>No Attorneys' Fees</u>. No attorneys' fees shall be paid with respect to any Claim except as specified herein or as allowed by a Final Order of the Bankruptcy Court.

12.14 <u>Addresses for Distributions to Holders of Allowed Claims</u>. Unless otherwise provided in the Plan, the Plan Documents or a Final Order of the Bankruptcy Court, distributions to be made under the Plan to holders of Allowed Claims shall be made by first class United States mail, postage prepaid to: (a) the latest mailing address set forth a Proof of Claim timely filed with the Bankruptcy Court by or on behalf of such

holders or (b) if no such Proof of Claim has been timely filed, the mailing address set forth in the Schedules. The Reorganized Debtor shall not be required to make any other effort to locate or ascertain the address of the holder of any Claim.

12.15 <u>Setoffs</u>. Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Disbursing Agent may, but shall not be required to, setoff against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, Claims of any nature whatsoever the Debtor may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor of any such Claim that the Debtor may have against such holder.

12.16 <u>Successors and Assigns</u>. The rights, duties and obligations of any Person or Governmental Unit named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person or Governmental Unit.

12.17 <u>Reservation</u>. If this Plan is not confirmed by the Bankruptcy Court for any reason, the rights of all parties in interest shall be preserved in full. Furthermore, any concession reflected herein is made for purposes of the Plan only, and if the Plan does not become effective, no party in interest shall be bound or deemed prejudiced by any such concession.

## ARTICLE 13
## MODIFICATION OF PLAN

13.1 Modification of Plan. Proponents may propose amendments to, or modifications of, the Plan under Section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date, the Reorganized Debtor may

remedy any defects or omissions or reconcile any inconsistencies in the Plan or the Confirmation Order or any other Order entered for the purpose of implementing the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan so long as the interests of the holders of Allowed Claims are not materially and adversely affected.

13.2   The foregoing Joint Plan Of Reorganization Submitted By Debtor And SunTrust Bank, dated as of August 19, 2009 is submitted by the undersigned this 19th day of August, 2009.

SunTrust Bank

By:_____
William S. Krueger
~~Senior~~ Vice President
First

La Bonita Ole, Inc.

By:_____
Tammy M. Young
President

remedy any defects or omissions or reconcile any inconsistencies in the Plan or the Confirmation Order or any other Order entered for the purpose of implementing the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan so long as the interests of the holders of Allowed Claims are not materially and adversely affected.

13.2    The foregoing Joint Plan Of Reorganization Submitted By Debtor And SunTrust Bank, dated as of August 19, 2009 is submitted by the undersigned this 19th day of August, 2009.

SunTrust Bank

By:_____
William S. Krueger
Senior Vice President

La Bonita Ole, Inc.

By: _____
Tammy M. Young
President